IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| JIMMIE CHANNON, W. DERICK JOHNSON, WILLIAM L. MCKAMEY, ANTHONY W. MCRAE, J. C. RIGGS, and NORMAN WADE, | § § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 6:13-CV-6 |
| PARNELL MCNAMARA, and MCLENNAN COUNTY, TEXAS | § § § § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiffs Jimmie Channon, W. Derick Johnson, William L. McKamey, Anthony W. McRae, J. C. Riggs and Norman Wade ("Plaintiffs") bring this action against Defendants Sheriff Parnell McNamara ("McNamara") in his individual and official capacity, and McLennan County, Texas, pursuant to 42 U.S.C. § 1983 for violating Plaintiffs' constitutional right to free speech and association and would show this Court as follows:

### I.   PARTIES

1.    Plaintiffs are former employees of the McLennan County Sheriff's Office. Each resides in McLennan County, Texas

2.    Defendant Parnell McNamara is named individually and in his official capacity as Sheriff of McLennan County, Texas and may be served at 901 Washington Avenue, Waco, Texas 76701.

3. Defendant McLennan County, Texas ("the County" or "McLennan County") is a county of the State of Texas and may be served with process through the County Judge, Scott Felton, 501 Washington Avenue, Waco, Texas 76701.

## II. JURISDICTION

4. Federal-question jurisdiction is invoked in accordance with 28 U.S.C. § 1331 because this controversy arises under "the constitution, laws or treaties of the United States;" specifically, the claims arise under 42 U.S.C. § 1983 and the First Amendment to the United States Constitution.

## III. VENUE

5. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## IV. INTRODUCTION

6. This is an action for money damages and equitable relief brought pursuant to 42 U.S.C. § 1983 for the violations of civil rights and privileges guaranteed Plaintiffs by the United States Constitution and the laws of the State of Texas.

## V. FACTS

7. The Plaintiffs in this case have a combined total of 114 years of experience as deputies with the McLennan County Sheriff's Department. Despite each Plaintiff's outstanding performance and service records on behalf of the residents of McLennan County, Defendant Parnell McNamara notified each Plaintiff on or about December 17,

2012 that their employment with the McLennan County Sheriff's Department would end on December 31, 2012.

8.  On January 1, 2013, Defendant McNamara assumed the office of Sheriff of McLennan County. On that date, he reaffirmed his intention to terminate the Plaintiffs and gave effect to that intent by not rehiring them. This decision by Defendant McNamara constitutes a termination of each Plaintiff.[1]

9.  A substantial or motivating factor in Defendant McNamara's decision to terminate the Plaintiffs was the fact that each of these Plaintiffs supported McNamara's political opponent in the 2012 Republican Primary race. Defendant McNamara retaliated against Plaintiffs due to their support and campaigning on behalf of McNamara's opponent for McLennan County Sheriff, Randy Plemons.

10. Although their levels of participation varied, the Plaintiffs generally supported Plemons by putting out yard signs, working neighborhoods campaigning door-to-door, and by attending fundraisers, debates, and other political events.

11. Through the guise of "reorganization," Defendant McNamara has engaged in a carefully orchestrated plan of demoting and discharging numerous employees of the McLennan County Sheriff's Department who supported Plemons' campaign, and has replaced them with individuals who supported his own campaign for Sheriff. In many

---

[1] The facts of this case are virtually identical to those presented to the Fifth Circuit in the case of *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998), *cert. denied*. 525 U.S. 1105, 119 S. Ct. 873, 142 L.Ed2d 774 (1999). Although technically the Plaintiffs were "not rehired" when the new Sheriff took office, the Court in *Brady* unambiguously concluded that such action has the same legal effect as a termination. *Brady* at 703. Citing long-standing Fifth Circuit precedent, the Court noted that the distinction between "terminated by a 'failure to rehire' rather than a 'dismissal' is irrelevant to the question of whether they were impermissibly terminated for exercising their First Amendment rights." *Brady* at 703, *citing McBee v. Jim Hogg* County, 730 F.2d 1009, 1015 (5th Cir. 1984) (*en banc*).

instances, the individuals demoted or discharged had substantially more experience than their successors.

12. The "reorganization" initiated by Defendant McNamara was not the result of a reduction in budget or a reduction in the workforce.[2] The decision to terminate Plaintiffs was retaliation by Defendant McNamara due to Plaintiffs' political support of Plemons. Defendant McNamara's actions are a clear violation of each Plaintiff's First Amendment rights. Further, it has long been settled law that the First Amendment forbids government officials from terminating a public employee based on political affiliation and speech. *See, Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998), *cert. denied*. 525 U.S. 1105, 119 S. Ct. 873, 142 L.Ed2d 774 (1999).

13. Plaintiff Jimmie Channon had approximately 23 years with the Department at the time of his discharge. He was a Lieutenant in the patrol division. Throughout his career, he earned positive performance evaluations.

14. Plaintiff Channon was an active supporter of Plemons' campaign for McLennan County Sheriff in the 2012 Republican Primary. He donated money to Plemons' campaign, went door to door passing out literature, and when given permission, put out yard signs in various locations throughout McLennan County. Additionally, Plaintiff Channon displayed a "Plemons for Sheriff" sign in the front yard of his home, and a bumper sticker on his vehicle supporting the Plemons campaign. Plaintiff

---

[2] In fact, the overall Sheriff Department budget appears to have increased as a direct result of the changes.

Channon also attended a fund raising dinner for Plemons, and appeared in several photographs on a "Plemons for Sheriff" Facebook page.

15. In addition to the above-stated acts of political speech and expression, Plaintiff Channon was active on Facebook, sending out numerous endorsements of Plemons. Plaintiff Channon participated in a parade wearing a "Plemons for Sheriff" shirt, while he rode on the Plemons parade float. At this same event, Plaintiff Channon was standing next to Plemons while Plemons talked to Defendant McNamara.

16. On election day, Plaintiff Channon stood holding a "Plemons for Sheriff" sign at one of the polling places. Plaintiff Channon remembers a supporter of Defendant McNamara taking a picture of him holding the sign.

17. Plaintiff W. Derick Johnson had approximately 12 years with the Department at the time of his discharge. He was a Sergeant in the patrol division. Plaintiff Johnson received consistently positive performance evaluations throughout his employment in the Sheriff's Department.

18. Plaintiff Johnson supported Candidate Plemons in the 2012 Republican Primary in a number of very public ways. Plaintiff Johnson was active on several neighborhood walks within McLennan County, and spent a substantial amount of his free time going door to door on behalf of Plemons passing out campaign literature and pamphlets. Additionally, Plaintiff Johnson kept a "Plemons for Sheriff" yard sign in his own yard, and would put similar signs out when given permission as part of the neighborhood walks. While doing neighborhood walks, Plaintiff Johnson wore a t-shirt with "Plemons for Sheriff" clearly displayed.

19.  Additionally, when asked, Plaintiff Johnson would express his support for Candidate Plemons. Plaintiff Johnson discussed his reasons for supporting Plemons' campaign with an individual who was known to be very active in the McNamara campaign and who had direct contacts with Defendant McNamara.

20.  In addition to the above, Plaintiff Johnson is a founding member of the Sheriff's Law Enforcement Association of McLennan County and was a member in good standing at the time of the 2012 Republican Primary. During that primary, the association publicly endorsed Plemons in the Sheriff's race.

21.  Plaintiff William McKamey had approximately 15½ years with the Department at the time he was discharged. He was a Corporal in the patrol division. Plaintiff McKamey received consistently positive performance evaluations throughout his employment in the Sheriff's Department.

22.  Like the Plaintiffs referenced above, Plaintiff McKamey was vocal in his support of Plemons in the 2012 Republican Primary. He attended Plemons fundraisers, and, when asked, engaged in a number of conversations with fellow McLennan County employees on the reasons for his support of Plemons. As with Plaintiff Johnson, Plaintiff McKamey had several conversations regarding his support of Plemons with an individual who strongly supported McNamara and was known to have direct contacts with McNamara.

23.  Throughout the campaign, Plaintiff McKamey had a yard sign supporting Plemons at his home. He also placed a "Plemons for Sheriff" sign at his barber shop so

that it could be clearly seen by the public. It was known throughout the Department that Plaintiff McKamey supported Plemons for Sheriff in the Republican Primary.

24. Prior to terminating him, Defendant McNamara had never spoken to nor met Plaintiff McKamey.

25. Plaintiff Anthony W. McRae had approximately 19 years with the Department at the time of his discharge, and was a Lieutenant in the jail. Plaintiff McRae had positive performance evaluations throughout his employment in the Sheriff's Department.

26. Plaintiff McRae supported Plemons in the 2012 Republican Primary in a number of very public ways. In addition to bumper stickers on all of his vehicles, he displayed a 4-foot sign in the back of his truck supporting Randy Plemons for Sheriff. Plaintiff McRae attended several fundraisers for Plemons, and assisted the campaign by posting yard signs in various places. Throughout the campaign, he maintained yard signs on behalf of Plemons at his residence, as well at the homes of several of his family members and friends.

27. At every political event that Plaintiff McRae attended, he wore a "Plemons for Sheriff" t-shirt, as did other members of his family.

28. Plaintiff McRae also went on at least three neighborhood walks in McLennan County in which a large group of Plemons supporters passed out fliers, literature, donation envelopes, and spoke to residents in support of Plemons' campaign.

29. As with Plaintiff Johnson, Plaintiff McRae is a member of the Sheriff's Law Enforcement Association of McLennan County. He donated money to the association's

campaign fund. As noted previously, the association publicly endorsed Plemons in the Republican Primary.

30. In addition to the above, Plaintiff McRae wore a shirt in support of Plemons to a political debate held at University High School in Waco. That debate was covered by several news organizations, and Plaintiff McRae can be seen in news footage from that event.

31. It was known throughout the Department that Plaintiff McRae supported Plemons in the Republican Primary, and like several of the other Plaintiffs, had conversations with at least one individual who was known to be a supporter of Defendant McNamara and who had direct contacts with McNamara.

32. Plaintiff J. C. Riggs had approximately 17 years with the Sheriff's Department at the time of his discharge. He was a Sergeant in the jail. His job performance evaluations were positive throughout his employment.

33. Like the other Plaintiffs, Plaintiff Riggs was outspoken in his support of Plemons in the Republican Primary. On at least one occasion, Plaintiff Riggs spoke about the reasons for his support of Plemons with an individual who he later found out to be a strong supporter of Defendant McNamara. During the campaign, Plaintiff Riggs and his wife expressed their support for Plemons on her Facebook page.

34. In addition to the above, Plaintiff Riggs expressed his support for Plemons by allowing his 7-year old grandson to appear in a campaign advertisement on behalf of Plemons that was run numerous times on television throughout the McLennan County area. In the commercial, Plaintiff Riggs' grandson portrayed a young Parnell McNamara.

Similar images of Plaintiff Riggs' grandson were widely disseminated to the public in the form of mailers and brochures on behalf of Plemons. It was widely known throughout the Department that the child portraying a young Parnell McNamara was the grandson of Plaintiff Riggs.

35. Plaintiff Riggs was a member of the Sheriff's Law Enforcement Association of McLennan County at the time of the Republican Primary, and as stated previously, that association supported Plemons. Additionally, Plaintiff Riggs attended the election watch party that was held at Tucker Hall, which happened to be next to the location where Defendant McNamara held his watch party.

36. Plaintiff Norman Wade had approximately 28 years with the Department at the time he was discharged. He was the Mental Health Deputy in the McLennan County Jail. Throughout his employment, Plaintiff Wade had positive performance evaluations.

37. Like the other Plaintiffs, Plaintiff Wade publicly supported Plemons in the 2012 Republican Primary. Throughout the campaign, Plaintiff Wade maintained numerous "Plemons for Sheriff" yard signs at this own residence, as well as at rental property that he owned. He also placed signs at several properties owned by his father-in-law. The legality of the placement of one of Plaintiff Wade's campaign signs became the subject of a complaint to the Republican Party, which further drew attention to his support of Plemons. The placement of the sign was determined to be legal in that the property on which the sign was placed was owned by Wade.

38. Plaintiff Wade and his wife further expressed their support of Plemons by maintaining posts on her Facebook page in support of Plemons. It was also posted on her

Facebook page that campaign signs were available for placement at both residences and local businesses.

39. Additionally, Plaintiff Wade spent considerable time in the McLennan County area hanging campaign signs for Plemons and going door to door on Plemons' behalf.

40. While attending the political debate between McNamara and Plemons that was held at University High School in Waco, Plaintiff Wade wore a "Plemons for Sheriff" shirt and sat with Plemons supporters. His support of Plemons was clearly visible to any McNamara supporter in attendance. Further, it was known in the Sheriff's Department that Plaintiff Wade was a supporter of Plemons' campaign.

41. These unprecedented firings were obvious political retaliation. Plaintiffs openly endorsed Republican Sheriff Candidate Randy Plemons. Plaintiffs' political activities occurred off-duty and on their personal time. The Plaintiffs were protected by the First Amendment of the United States Constitution, and their political speech and expression was a matter of public concern. These terminations have caused Plaintiffs substantial damage.

42. Prior to terminating Plaintiffs, Defendant McNamara was either aware or became aware that each of the Plaintiffs supported Plemons in the 2012 Republican Primary. Each Plaintiff expressed his choice for Plemons in public on numerous occasions, and in such a manner that it must have been known to Defendant McNamara.

43. Defendant McNamara terminated Plaintiffs despite the fact that each had excellent service records with the Department. There existed no valid reason whatsoever

for the terminations of these Plaintiffs. Defendant McNamara terminated Plaintiffs without meeting with any of them, and to date, has given no explanation for their firings. The position occupied by each Plaintiff has been filled, in most instances with an individual possessing less law enforcement experience.

44. A review of many of the other personnel changes made by Defendant McNamara upon taking office indicate a <u>strong preference</u> for employees who supported him in his campaign for Sheriff. In addition to the Plaintiffs' terminations, demotions and promotions appear to have been made based on political support, or lack thereof.

45. For all of the reasons stated above, there is a direct causal connection between the Plaintiffs' protected activity and their terminations. Plaintiffs assert that their political activity in support of Plemons was a substantial or motivating factor in Defendant McNamara's decision not to rehire them.

## VI. CAUSES OF ACTION UNDER 42 U.S.C. § 1983

### *A. First Amendment Retaliation*

46. Paragraphs 1 - 45 set forth above are incorporated herein by reference.

47. Plaintiffs engaged in speech concerning a matter of public concern. Plaintiffs suffered adverse employment actions in that each was terminated from his employment with McLennan County Sheriff's Department. Specifically, Plaintiffs' protected speech consisted of their political beliefs, association, and affiliation with a former political candidate. Plaintiffs' speech was a substantial or motivating factor in Defendants' decision to terminate Plaintiffs. Thus, Defendant McNamara, in his individual and official capacity as Sheriff, while acting under color of law, deprived Plaintiffs of their

right to free speech and association – guaranteed by the First Amendment to the United States Constitution – in violation of 42 U.S.C. § 1983.

48. "There can be no question that . . . campaigning for a political candidate . . . relate[s] to a matter of public concern." *Vojvodich* v. *Lopez,* 48 F.3d 879, 885 (5th Cir. 1995). The law was clearly established at the time of Plaintiffs' terminations that a public employee's First Amendment political speech and expression cannot be the basis for an adverse employment action by a governmental official or governmental entity. *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998), *cert. denied*. 525 U.S. 1105, 119 S. Ct. 873, 142 L.Ed2d 774 (1999). Thus, Defendant McNamara displayed reckless and callous indifference to decades of clearly established precedent and is not entitled to qualified immunity from liability in this civil action.

### B. Cause of Action against the County

49. Paragraphs 1 – 48 set forth above are incorporated herein by reference.

50. At the time of the events described above, Defendant McNamara was either the Sheriff-Elect or the Sheriff of McLennan County. When, as Sheriff of McLennan County, Defendant McNamara followed through with his intent to discharge Plaintiffs by not rehiring them, he acted under color of the laws and regulations of the State of Texas.

51. Pursuant to Texas law, Defendant McNamara was the final policymaker for McLennan County with respect to the actions that form the basis of this lawsuit. As Sheriff, he wields final policymaking authority in the County regarding law enforcement. It is settled law that "Texas Sheriffs exercise final policymaking authority with respect to

the determination of how to fill employment positions in the County Sheriff's department." *Brady,* 145 F.3d at 700.

52.     Defendant McLennan County is liable to Plaintiffs since Defendant McNamara's termination of Plaintiffs constitutes an official policy or custom of the municipality and since that act caused the constitutional injury. As the final policymaker, McLennan County Sheriff Parnell McNamara's actions constitute the official policy of Defendant County with respect to the matters forming the basis of this lawsuit.

53.     The constitutional violations in this case were the direct result of Defendant McNamara's actions and the Plaintiffs' injuries and damages were proximately caused by Defendant McNamara's actions as final policymaker.

## VII. DAMAGES

54.     As a direct and proximate result of the acts and omissions outlined above, Plaintiffs have been severely damaged. Defendants' conduct has caused past and future economic loss to each Plaintiff in the form of lost wages and benefits. Also, each Plaintiff has sustained damage to his reputation, ability to earn a living, and standing in the community, and will continue to be so damaged in the future.

55.     Additionally, each Plaintiff has sustained severe emotional suffering and mental anguish as a result of their wrongful termination, and will continue to so suffer in the future.

56.     Each Plaintiff seeks compensatory damages from each Defendant in an amount deemed sufficient by the jury to compensate him for all damages sustained, both past and future.

57.     Each Plaintiff also seeks the equitable remedy of reinstatement.

58. Each Plaintiff seeks exemplary damages against Defendant McNamara in his individual capacity.

59. Each Plaintiff has retained the services of the undersigned attorney, and claims entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. § 1983 and § 1988.

## VIII.  JURY DEMAND

60. Plaintiffs respectfully request trial by jury.

## IX. PRAYER

For these reasons, each Plaintiff seeks a judgment against Defendants for:

    a. compensatory and actual damages in an amount deemed sufficient by the trier of fact;

    b. exemplary damages;

    c. attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988;

    d. costs of court; and

    e. interest allowed by law for prejudgment or post-judgment interest.

Respectfully submitted,

By: */s/Don Tittle*
    Don Tittle
    State Bar # 20080200
LAW OFFICES OF DON TITTLE, PLLC
6301 Gaston Avenue, Suite 440
Dallas, Texas  75214
(214) 522-8400
(214) 389-1002 – Fax
dontittle@earthlink.net

*ATTORNEY FOR PLAINTIFFS*